R. J. SCHWAB & SONS CO., Appellant, v. G. E. FRIEZE et al., Respondents.

Kansas City Court of Appeals, June 20, 1904.

1. **SALES: Completion of: Shipment: Indebtedness.** The delivery of goods sold to a carrier completes the transaction and on the subsequent acceptance the indebtedness accrues.

2. ——: ——: ——: ——. Plaintiff shipped certain furnaces to defendant which were duly accepted, and later defendant ordered a door to replace one broken in transit. Plaintiff charged defendant with the amount of the furnaces on the date of the shipment and subsequently charged for the door and gave credit at the same time with the same amount. *Held*, the indebtedness must be fixed and determined without reference to the door transaction and it accrued of the date of the first shipment.

3. **MECHANICS' LIEN: Time of Filing: Subcontractor.** A subcontractor must file his lien paper within four months after the indebtedness accrues.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey*, Judge.

AFFIRMED.

*Ira K. Alderman* for plaintiff.

(1) Plaintiff's indebtedness accrued under the statute, November 5, 1902, the date on which the last material was furnished, pursuant to contract between the owner, Eshelman, and the original contractor, Frieze, and pursuant to the contract between plaintiff and Frieze. Livermore v. Wright, 33 Mo. 31.; Iron Works v. M. & S., 80 Mo. 265; Miller v. Whitelaw, 28 Mo. App. 639; Williams v. Railroad, 153 Mo. 487; Carter v. Foster, 145 Mo. 383; Wetmore v. Crouch, 150 Mo. 671; Phillips on Mechanic's Lien, sec. 326; Page v. Bettes, 17 Mo. App. 367.

Schwab & Co. v. Frieze.

*James & Norris* for respondent.

(1)    When a selling merchant in a distant city delivers the goods ordered, in good order, to the common carrier in such city for shipment to the purchaser under a contract for sale "free on board" in such city, the seller's duty is complete. Any breakage, loss or destruction of part of the goods in transit is not a matter between seller and either the railroad or purchaser, but wholly a matter betwen the railroad and purchaser.

SMITH, P. J.—The defendant Frieze entered into a contract with his codefendant, Eshelman, by which the former was to put a furnace in each of two certain houses owned by the latter. Frieze, on August 22, 1902, mailed an order to the plaintiff, a manuafacturer at Milwaukee, Wisconsin, to ship to him two "No. 44 Gilt Edge Furnaces" with casings. The former had, previously to sending this order, written to and received from plaintiff its catalogues showing its price lists and discounts on the productions of its manufacturing establishment. The plaintiff on September 11, 1902, shipped by railway the two furnaces ordered, which a few days thereafter were received by Frieze with an invoice of the same. It appears that in the transportation of the furnaces a lower ashpit door-frame to one of them was broken; and on November 5, next following, Frieze telegraphed to plaintiff to ship to him by express "one lower ashpit door-frame," which request was promptly complied with. The plaintiff rendered Frieze the following statement of the account between them:

"Milwaukee, February 20, 1903.
"G. F. Frieze, Graham, Missouri,
    "In account with R. J. Schwab & Sons Co.
"September 11, 1902, to 2 No. 44 G. E.
    Furnaces ........ ..........$162.00

November 5, 1902, to 1 No. 44 G. E.
　　Lower Front ........ ...... 2.16    164.16
November 5, 1902, by 1 No. 44 G. E.
　　Lower Front broken in transit.          2.16
　　　"To balance due ..........        $162.00"

It is in effect conceded that with the exception here-inafter stated the plaintiff took the steps required to secure a statutory materialman's lien for the purchase price of the two furnaces against the buildings in which they were placed and the lots on which such buildings were situate.

As has already been stated, the furnaces were shipped September 11, 1902. The lien was filed March 3, 1903. The plaintiff was at most but a subcontractor; and to be entitled as such to the benefit of the statute, section 4207, Revised Statutes, it was required, *within four months after such indebtedness accrued to file with the clerk of the circuit court a just and true account of the demand due it after all just credits had been given which was to be a lien, etc.* If the indebtedness accrued on September 11, then it is clear that the paper lien which was filed March 3, 1903, was not filed within the four months required by the statute, and was therefore ineffective.

But the plaintiff insists that the filing was in time, for the reason that it appears from the undisputed evidence that on November 5, 1902, the plaintiff, on Frieze's order, furnished a further debit item in the account of that date, to-wit: "1 No. 44 G. E. Lower Front, $2.16." But it will be noticed that in the same account there is a corresponding credit of the same date and amount, so that the indebtedness of September 11 was neither increased nor diminished by the transaction of November 5; or, in other words, the indebtedness that accrued at the former date is that for which the lien is claimed, and the latter transaction in no way affected such former.

When the plaintiff delivered the two furnaces to the carrier of Milwaukee, f. o. b., the delivery, subject to the right of stoppage *in transitu* was complete. Garden C. Co. v. Railway, 64 Mo. App. 305, and cases there cited. And as there was a subsequent acceptance of the furnaces the sale thereby became complete in every respect. Lovelace v. Stewart, 23 Mo. 384; Gill v. Reed, 55 Mo. App. 246; Schermerhorn v. Herold, 81 Mo. App. l. c. 466. And the indebtedness then accrued.

It does not clearly appear why the plaintiff furnished the broken part of the furnace without charge to Frieze. It may have been that it was paid for by the carrier. It was certainly not paid for by Frieze, or, if so, there is nothing in the evidence showing that fact, if it was a fact. The plaintiff's secretary testified that on the sixth of November, 1902, he shipped to Frieze the "lower front" ordered, and on the same day charged $2.16 for it, and at the same time credited his account with the same amount on account of the breakage of the lower front originally shipped; so that it is quite manifest that this last-named item of $2.16 had nothing whatever to do with the indebtedness of $162 which had accrued on September 11. If this $2.16 item had increased, or possibly diminished, the indebtedness that had previously accrued, then the rule declared in Page v. Bettes, 17 Mo. App. l. c. 373 might have some application.

The only indebtedness for which the lien is claimed was that of $162 for the two furnaces sold and delivered to Frieze on September 11, 1902. There was no other item in the account for which *a charge was made* and for which a lien was claimed. The two debit and credit items for $2.16 did not affect the item of $162 for which the lien was claimed. The former had no relation to the latter. The right of the plaintiff to a lien for the $162 indebtedness must be determined without reference to the $2.16 item of the account. It is obvious that since the lien was not filed within the four months

after the $162 indebtedness accrued, as required by statute, that it was ineffectual. In this view of the case it becomes unnecessary to notice the other points discussed in briefs of counsel.

It results that the action of the court in sustaining the demurrer to the case as to the defendant Eshelman was proper. The judgment will be affirmed.

All concur.